Joshua Trigsted

Oregon State Bar ID Number 06531

Trigsted Law Group, P.C.

5200 SW Meadows Rd, Ste 150

Lake Oswego, OR 97035

888-247-4126 ext. 1

Josh@TLGConsumerLaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **MOUAD MUTAHER & ISMAIL IBRAHIM**,<br><br>Plaintiffs,<br><br>vs.<br><br>**RYAN JAMES MARTIN,**<br><br>**BRANDON L. ALLEN &**<br><br>**GROVE COMPUTER SERVICES, LLC,**<br><br>Defendants. | Case No.:  3:24-cv-889<br><br>**COMPLAINT**<br><br>FRAUD/UNJUST ENRICHMENT WITH DIVERSITY JURISDICTION |

## I. INTRODUCTION

1. This is an action for damages brought by victims of a financial fraud perpetrated by the above-named Defendants.

## II. JURISDICTION

2. This court has jurisdiction over this dispute pursuant to 28 U.S.C. §

1332(a)(1) because the dispute is over an amount greater than $75,000 and the parties are residents of different States.

### III. PARTIES

3. Plaintiff, Mouad Mutaher, ("Plaintiff"), is a natural person residing in Alameda County, California.

4. Plaintiff Ismail Ibrahim is a natural person residing in Kings County, New York.

5. Defendant Ryan James Martin ("Defendant Martin") is an individual residing in Washington County, Oregon.

6. Defendant Brandon L. Allen ("Defendant Allen") is an individual residing in Washington County, Oregon.

7. Defendant Grove Computer Services, LLC, ("Defendant GCS") is an Oregon Limited Liability Corporation with principal place of business in Forest Grove, Oregon.

### IV. FACTUAL ALLEGATIONS

8. In or around December, 2023, Mouad Mutaher and Ismail Ibrahim, on behalf of themselves and their business partners, approached Defendants Ryan James Martin and Brandon L. Allen, about the potential purchase of cellular phones for resale.

9. Plaintiffs had been referred to Defendants by a friend as a potential source of cell phones and Defendants Martin, Allen and GCS, on information and belief, did at one time actually deal in cellular phones.

10. Defendants Martin and Allen were members of Defendant GCS and were doing business under that name at all relevant times herein. Defendant GCS was administratively dissolved for unknown reasons on March 7, 2024, and reinstated on April 26, 2024, according to the Oregon Secretary of State records.

11. On or about January 4, 2024, Defendants Martin and Allen on behalf of Defendant GCS, entered into a contract with Plaintiffs and their business partners to sell a large batch of cell phones, to conform with a list of specific phones provided prior to agreement in a spreadsheet, to Plaintiffs and their business partners for a cash price of $150,000.

12. On or about January 6, 2024, Plaintiff Mutaher paid, through Defendants Martin and Allen, a cash deposit of $30,000 to Defendant GCS toward the $150,000 cash price.

13. On or about January 6 or 7th, 2024, Plaintiff Ibrahim made a payment via wire transfer of $60,000 toward the purchase price of $150,000.

14. Sometime after January 6, 2024, but still in or around January, 2024, after the agreement had been made, Defendants Martin and Allen caused some boxes to be shipped to the agreed upon address for delivery of the cell phones in Dubai. These boxes were never released to Plaintiffs or their business partners and on information and belief these boxes contained junk and not the agreed-upon phones. On information and belief, the few boxes that were delivered to Dubai were not delivered to Plaintiffs or their partners because they did not conform with the shipping information that Federal Express

(the carrier) had. On information and belief, these boxes were a ruse designed to convince Plaintiffs that Defendants Martin and Allen actually had possession of and intended to deliver the products, which in turn would hinder and delay any efforts by Plaintiffs to recover their funds.

15. On or about January 9, 2024, Plaintiff Ibrahim made a wire transfer of $45,000 to Defendants Martin and Allen, doing business as Defendant GCS, toward the purchase price of $150,000.

16. On or about January 10, 2024, Plaintiff Ibrahim made a wire transfer of $6,700 to Defendants Martin and Allen, doing business as Defendant GCS, toward the purchase price of $150,000.

17. On or about January 10, 2024, Plaintiff Ibrahim made a wire transfer of $8,300 to Defendants Martin and Allen, doing business as Defendant GCS, toward the purchase price of $150,000.

18. As of the payment made in paragraph 16, above, a total of $150,000 had been paid by Plaintiffs under the contract for the cell phones and they had complied with their obligation under the deal and were owed the phones.

19. On or about January 10, 2024, Plaintiff Ibrahim made a mistaken wire transfer of an additional $66,100 to Defendants Martin and Allen, doing business as Defendant GCS.

20. In total, Plaintiffs paid $216,000 to Defendants Martin and Allen, doing business as Defendant GCS.

21. Defendants Martin and Allen were, one or the other, directly involved with all of the interactions between Plaintiffs and Defendant GCS, that led to the contract formation and the payments, in the form of phone calls, emails, and text messages by one or the other of Defendants Martin or Allen.

22. On or about January 10, 2024, Plaintiffs realized that an overpayment had been made and asked Defendants Martin and Allen, doing business as Defendant GCS, to immediately return the overpayment of $66,100.

23. Defendants Martin and Allen, doing business as Defendant GCS, made payments to Plaintiff Ibrahim on January 18, 19, 20, and 23, and on February 13, 2024, in the total amount of $10,000. Thus, as of February 13, 2024, Defendants Martin and Allen, doing business as Defendant GCS, still owed Plaintiffs the accidental overage of $56,100, in addition to the cell phones for which Plaintiffs had paid $150,000.

24. In or around the end of February, 2024, Plaintiffs realized that Defendants Martin and Allen had defrauded them and that they would likely never receive any phones or any further refund of money, and Defendants hired the law firm Trigsted Law Group, PC, to represent them, and attorney Joshua Trigsted sent a notice letter to Defendants Martin and Allen and GCS, demanding immediate return of the overpayment and immediate delivery of the promised phones, and threatening litigation if that did not occur.

25. In or around early March, 2024, Plaintiffs' attorney Joshua Trigsted received a letter dated February 27, 2024, notifying him that Defendant GCS had hired

Miller Nash LLP to represent it in this matter.

26. Between February 27, 2024, and April 29, 2024, Plaintiffs' and Defendants' attorneys painstakingly negotiated a detailed written agreement that called for delivery of a specific set of cell phones, detailed on a spreadsheet, within 10 days of effective date, and for full payment of the overpayment of $56,100, within 5 days of the effective date.

27. On April 29, 2024, Miller Nash sent Trigsted Law Group a finalized signed agreement, making the effective date April 29, 2014.  According to that new agreement, the phones were to be delivered overnight within 10 days of the effective date to a specified address and the overpayment was to be made within 5 days of the effective date.

28. On May 3, 2024, Miller Nash, in response to an email by attorney Trigsted to check on the status of the $56,100, payment, notified attorney Trigsted by email that it had withdrawn as attorney for Defendant GCS and encouraging attorney Trigsted to contact their Defenants Martin and Allen directly.

29. On May 3, 2024, Attorney Trigsted reached out to Defendants Martin and Allen to inquire whether they intended to honor the agreement.  Defendant Martin indicated by email that he did intend to honor it in full, but that as of May 3, 2024, only a "good faith payment" would be sent, in an unspecified amount, by Defendant Allen.

30. On May 3, 2024, Defendant Allen sent a set of 10 Western Union money orders totaling $9,800, to Plaintiffs, care of Attorney Trigsted.

31. The payment of $9,800, in paragraph 30 left a total payment balance in favor of Defendants Martin and Allen of $196,300.

32. No Defendant ever provided Plaintiffs with any cell phones.

33. On information and belief, no Defendant ever had possession, intent to gain possession, or intent to actually deliver any of the cell phones Plaintiffs intended to purchase. Defendant Martin's, Allen's, and GCS's many representations to the contrary were material misrepresentations to Plaintiffs.

34. On information and belief, no Defendant ever intended to pay back in full the overpayment paid by Plaintiff Ibrahim. Defendant Martin's, Allen's, and GCS's many representations to the contrary were material misrepresentations to Plaintiffs.

35. On information and belief, Defendant Martin, Allen and GCS intended that their misrepresentations about their possession and intent to deliver cell phones and about their intention to return overpaid moneys would be relied upon by Plaintiffs, and that this reliance would hinder, delay, and mislead Plaintiffs.

36. On information and belief, both Plaintiffs reasonably relied on Defendant Allen's, Martin's and GCS's many misrepresentations in relation to their possession and intention to deliver cell phones and of their intention to return the overpayment of money.

37. All of Defendant Allen's, Martin's and GCS's actions alleged above took place, on information and belief, in Washington County, Oregon.

## COUNT I: UNJUST ENRICHMENT

38. Plaintiffs reincorporate by reference all of the preceding paragraphs.

39. The preceding paragraphs state a *prima facie* case for Plaintiffs and against all Defendants for unjust enrichment.

## COUNT II: FRAUD

40. Plaintiffs reincorporate by reference all of the preceding paragraphs.

41. The preceding paragraphs state a *prima facie* case for Plaintiffs and against all Defendants for common law fraud.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that judgment be entered jointly and severally against all Defendants for:

A. Actual Damages in the amount of $196,300, and statutory interest of 9% on that amount from the date of January 10, 2024, until the date of judgment.

B. Costs and prevailing party fee.

C. Punitive Damages in the amount of $2,000,000.

D. For such other and further relief as may be just and proper.

Dated this 1st day of June, 2024

By:_____
Joshua Trigsted
Trigsted Law Group, P.C.
5200 SW Meadows Rd, Ste 150
Lake Oswego, OR 97035
888-247-4126 ext. 1
866-927-5826 facsimile
Attorney for Plaintiff