IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOUAD MUTAHER and
ISMAIL IBRAHIM,

        Plaintiffs,

    v.

RYAN JAMES MARTIN, BRANDON
L. ALLEN, and GROVE COMPUTER
SERVICES, LLC,

        Defendants.

Case No. 3:24-cv-00889-JR

FINDINGS AND RECOMMENDATION

RUSSO, Magistrate Judge:

    Defendants Ryan James Martin and Grove Computer Services, LLC[1] move to dismiss plaintiffs Mouad Mutaher and Ismail Ibrahim's complaint pursuant to Fed. R. Civ. P. 12(b)(7). For the reasons stated below, defendants' motion is denied.

---

[1] "Defendant Brandon Allen has not yet been served in this matter pursuant to Fed. R. Civ. P. 4 and as such is intentionally omitted from the instant motion." Defs.' Mot. Dismiss 1 n.1 (doc. 17).

Page 1 – FINDINGS AND RECOMMENDATION

BACKGROUND

On August 20, 2024, plaintiffs filed an amended complaint alleging unjust enrichment, fraud, and breach of contract. First Am. Compl. ¶¶ 46-50 (doc. 13). Plaintiffs' claims stem from a transaction with defendants for the purchase of used cell phones. *Id.* at ¶ 8. In particular, on January 4, 2024, defendants agreed to provide plaintiffs with "a large batch" of specified used cell phones for $150,000. *Id.* at ¶ 11. Plaintiffs further assert that defendants "both knew the representations that the phones would be provided was false and intended that plaintiffs would rely on their false promise to provide the cell phones." *Id*. Between January 6 and January 10, 2024, plaintiffs made five payments, equalling the entire $150,000 purchase price. *Id.* at ¶¶ 13-18.

Plaintiffs then "made a mistaken wire transfer of an additional $66,100" to defendants on January 10, 2024. *Id.* at ¶ 19. Plaintiffs in total paid defendants $216,000. *Id.* at ¶ 20. The same day, after realizing the overpayment, plaintiffs requested that defendants return the overpaid amounts. *Id.* at ¶ 22. Plaintiffs describe defendants' response to these requests as alternating between "threatening and cajoling and calming . . . wherein [defendants] repeatedly lied about their intention to provide the promised phones and/or return the [overpaid] money." *Id.*

On January 26, 2024, Martin sent images to plaintiffs indicating that he "had scheduled a payment of $66,100 to 'King's Trading, Inc.,' a company that Plaintiff Ibrahim was affiliated with, to pay him back for the overpayment." *Id.* at ¶ 24. Yet, as of February 13, 2024, defendants had only repaid plaintiffs $10,000. *Id.* at ¶ 23.

Defendants eventually shipped boxes to Dubai, however, the boxes "contained junk and not the agreed-upon phones." *Id.* at ¶ 25. At the end of February, plaintiffs' counsel sent defendants a demand letter, seeking "immediate return of the overpayment and immediate delivery of the

promised phones." *Id.* at ¶ 27. Defendants thereafter retained counsel who negotiated an agreement with plaintiffs' counsel. *Id.* at ¶ 28.

On April 29, 2024, the parties executed a contract requiring defendants to deliver the previously agreed upon cell phones within ten days and a full refund of the outstanding $56,100 overpayment amount within five days ("April 2024 Agreement"). *Id.* at ¶ 29. That agreement lists Grove Computer Services, LLC as the "seller" and Emad Ahmud as the "buyer." Defs.' Mot. Dismiss Ex. A, at 1 (doc. 17). Plaintiffs, along with Answer Yahya, Adbulaziz Moh. Alshaif, and Kings Trade, Inc. are designated as "buyer affiliates." *Id.* The April 2024 Agreement specifies that Mutaher is the "Buyer's sole representative authorized to receive, to inspect, and to accept or reject shipment of the Replacement Units and authorized to act on Buyer and Buyer Affiliates' behalf in connection with the delivery of the Replacement Units." *Id.* at 3. The partial repayments of the overpaid amounts were also made directly to plaintiffs. *Id.* at 1-2.

Over a month later, on May 3, 2024, defendants "sent a set of ten Western Union money orders totaling $9,800." First Am. Compl. ¶ 33 (doc. 13). Plaintiffs allege that defendants have not returned either the remaining overpayment amount or delivered the cell phones as promised in the April 2024 Agreement. *Id.* at ¶¶ 34-35.

On September 10, 2024, defendants filed the present motion to dismiss. Briefing was completed in regard to that motion on October 7, 2024.

## STANDARD OF REVIEW

Under Rule 12(b)(7), an action may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Pursuant to Rule 19, the court evaluates a 12(b)(7) motion in three steps. First, the court must determine "whether the absent party must be joined under Rule 19(a)" – i.e., whether they are a "required" party. *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation,*

48 F.4th 938, 943 (9th Cir. 2022). Second, if so, the court asks "whether joinder of that party is feasible." *Id.* Third, "if joinder is infeasible, [the court] must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[2] *Id.* (internal quotations omitted). This "inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir. 1990) (citations omitted). "The moving party has the burden of persuasion in arguing for dismissal." *Id.* The court may additionally "consider evidence outside of the pleadings." *Weiss v. Perez,* 635 F.Supp.3d 930, 939 (N.D. Cal. 2022).

## DISCUSSION

Defendants argue that plaintiffs' complaint should be dismissed because they failed to join the remaining parties to the April 2024 Agreement. Defendants claim that all "buyer affiliates" and the "buyer" are necessary and indispensable, without which "full relief is impossible to obtain." Defs.' Mot. Dismiss 4, 7 (doc. 17).

**I.    Necessary Parties**

In arguing that the absent parties are necessary under Rule 19, defendants point to three reasons without citing to any supporting case law or providing any analysis: (1) "the Transaction and the Agreement directly involve the Absent Parties, and their rights and obligations under these alleged contracts may be affected by the outcome of this litigation"; (2) "[f]ull and complete relief cannot be afforded without the participation of [the absent parties], as they are integral to the

---

[2] "Before 2007, parties that are now called 'required' under Rule 19 were referred to as 'necessary,' and parties without whom the litigation could not, in good conscience, continue, were referred to as 'indispensable.'" *Tribes v. U.S. Bureau of Reclamation,* 2023 WL 7182617, at *14 n.20 (D. Or. Sep. 11, 2023), *adopted by* 2024 WL 471977 (D. Or. Feb. 7, 2024) (citation and internal quotations omitted). Both case law and the parties continue to employ these terms, such that the Court employs them as well.

contractual relationship that forms the basis of Plaintiff's claims"; and (3) "[p]roceeding without [the absent parties] may expose the current Defendants to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."[3] *Id.* at 4.

The court applies a "two-pronged inquiry" to determine whether absent parties are necessary under Rule 19. *White v. Univ. of Cal.*, 765 F.3d 1010, 1027 (9th Cir. 2014). An absent party must be necessary for it to be indispensable. *MasterCard Int'l. Inc. v. Visa Int'l. Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). "First, the court must determine whether complete relief can be afforded if the action is limited to the existing parties." *White*, 765 F.3d at 1027 (citation and internal quotations omitted). "Second, the court must determine whether the absent party has a legally protected interest in the subject of the action." *Id.* (citation and internal quotations omitted). If an absent party has a legally protected interest, then the court must determine "whether the party's absence will impair or impede the party's ability to protect that interest or will leave an existing party subject to multiple, inconsistent legal obligations with respect to that interest." *Id.*

"[Rule 19(a)(1)(A)] is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action."

---

[3] As a part of defendants' broader argument that the absent signatories to the agreement are necessary, they maintain that plaintiffs are seeking dissolution by claiming fraud in the inducement, not common law fraud. Defs.' Reply to Mot. to Dismiss 4-5 (doc. 20); *see also* Defs.' Mot. Dismiss 9 (doc. 17). This is incorrect. The complaint pleads a straightforward common law fraud claim and seeks to keep the parties' contracts in place for the sake of enforcement. First Am. Compl. ¶¶ 49-50 (doc. 13); *see also* Pls.' Resp. to Mot. Dismiss 4-5 (doc. 19) (plaintiffs are "not attempting to 'decimate' any contract in this case. Plaintiffs believe that [defendants'] behavior . . . amounts to Fraud [but], in the alternative, in case Plaintiffs fail to meet the standard of proof of Fraud, which is an elevated standard, Plaintiffs have also alleged breach of contract in the hope of at least recovering damages based on the fact that Defendants did not provide what was promised in exchange for the money they paid"). Importantly, the Ninth Circuit has drawn a distinction between setting aside a contract and enforcing it. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 881 (9th Cir. 2004); *see also Ward v. Apple Inc.*, 791 F.3d 1041, 1053 (9th Cir. 2015) ("We have not, however, held that an absent party is always required when the relief sought in an action merely implicates an absent party's contract rights.").

*Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983). This factor "is concerned only with 'relief as between the persons already parties, not as between a party and the absent person whose joinder is sought.'" *Eldredge v. Carpenters 46 N. Cal. Cntys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (quoting 3A Moore's Federal Practice P 19.07-1(1), at 19-128 (2d ed. 1980)).

Here, plaintiffs acted on behalf of the "buyer" during the transaction and April 2024 Agreement. Moreover, plaintiffs seek only to recover damages for defendants' allegedly wrongful conduct. "Because defendants are liable on their own for their violations, plaintiff[s] can obtain complete relief for defendants' violations from defendants." *Brown v. Stored Value Cards, Inc.*, 2023 WL 6366756, at *2 (D. Or. Sept. 29, 2023). Indeed, the complaint indicates that plaintiffs made the cell phone payments at least in part from their own accounts and/or funds, such that the injury inheres to them personally.

Additionally, plaintiffs adequately embody the absent parties' interests. "[A]n absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999). To determine whether the existing parties adequately represent the absent ones, the court evaluates three factors. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1991) (citation and internal quotations omitted). First, "whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments." *Id.* Second, "whether the party is capable of and willing to make such arguments." *Id.* Third, "whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." *Id.* The interests of plaintiffs are nearly identical to the absent parties, as such

plaintiffs can "be expected to adequately represent" the absent parties' interests in this action. *Brimberry v. Northwestern Mut. Life Ins. Co.*, 2014 WL 689911, at *3 (C.D. Cal. Feb. 20, 2014).

Not only did Mutaher act directly as the "Buyer Representative" in entering into the April 2024 Agreement, but plaintiffs are also seeking to enforce a contract to which the absent parties agreed and are the beneficiaries of. This alignment of interests at all stages suggests that plaintiffs are capable and willing to make arguments that protect the absent parties' interests.

Finally, while defendants might be exposed to defending other actions from the absent parties, this fact alone "is insufficient to require Rule 19 joinder if the parties to the action can obtain meaningful relief and would not confront inconsistent judgments." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 844 F.2d 1050, 1054 n.5 (3d Cir. 1988); *see also Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 977 (9th Cir. 2008) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.") (citation and internal quotations omitted). Defendants fail to raise any facts that rise to the substantial risk threshold.

## II.    Indispensable Parties

Even assuming the absent parties were necessary/required, joinder is not feasible. That is, two absent parties reside outside of the United States. Defs.' Mot. Dismiss Ex. A, at 1 (doc. 17). If a party is necessary under Rule 19(a) but cannot be joined, the court turns to Rule 19(b). *Equal Emp. Opportunity Comm'n v. Peabody Western Coal Co.*, 610 F.3d 1070, 1083 (9th Cir. 2010). In determining indispensability, the court looks at four primary factors: (1) "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already

parties"; (2) "the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided"; (3) "whether a judgment rendered in the person's absence will be adequate"; and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Shermoen*, 982 F.2d at 1318-19.

Defendants claim that "[a] judgment rendered in the absence of [the absent parties] would be prejudicial" to both defendants and the absent parties, "as it would affect contractual rights and obligations without allowing all involved parties to present their positions." Defs.' Mot. Dismiss 9 (doc. 17). As noted above, any prejudice towards the absent parties is alleviated by adequate representation of those parties' interests by plaintiffs.

The second factor weights against dismissal as well. *See Campbell v. Triangle Corp.*, 56 F.R.D. 480, 482 (E.D. Pa. 1972) ("Rule 19(b) recognizes that the shaping of relief may avert or lessen prejudice to absent parties, and the award of money damages in lieu of specific relief has been utilized by courts to achieve this purpose.").

The third factor also weighs against dismissal. Plaintiffs would be able to recover on the claims alleged against defendants, thereby protecting the interests of the absent parties. Further, while defendants allege that "dismissal may temporarily inconvenience the Plaintiffs," the last factor underscores the challenge of refiling this action with all absent parties. Defs.' Mot. Dismiss 9 (doc. 17). Critically, the "buyer" resides abroad outside the reach of this Court. Defs.' Mot. Dismiss Ex. A, at 1 (doc. 17). Given its international nature, this Court finds no other forum suitable to resolve this dispute. *See Brosnahan v. Pozgay*, 2007 WL 173969, at *4 (S.D. Cal. Jan. 17, 2007) ("[A] critical consideration under Rule 19(b) is the availability or unavailability of an alternative forum.") (citation and internal quotations omitted). The four factors favor proceeding among the existing parties.

## RECOMMENDATION

For the foregoing reasons, defendants' Motion to Dismiss (doc. 17) should be denied. This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgement or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of the party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of the fact in an order or judgement entered pursuant to this recommendation.

DATED this 16th day of October, 2024.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge